**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 19-4242**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

CALVIN TEKO COSTON,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Rebecca Beach Smith, Senior District Judge. (2:05-cr-00084-RBS-TEM-1)

Submitted: June 1, 2020                                    Decided: July 13, 2020

Before DIAZ, FLOYD, and RUSHING, Circuit Judges.

Affirmed by published opinion. Judge Floyd wrote the opinion in which Judge Diaz and Judge Rushing joined.

Geremy C. Kamens, Federal Public Defender, Patrick L. Bryant, Appellate Attorney, Alexandria, Virginia, Wilfredo Bonilla, Jr., Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Alan M. Salsbury, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

FLOYD, Circuit Judge:

During his third chance on supervised release, Defendant-Appellant Calvin Teko Coston failed his third drug test in a one-year period. That slip-up triggered a revocation provision, 18 U.S.C. § 3583(g), that restricted the district court's discretion to continue his supervised release. Moreover, presented with new supervised release violations and previous violations for which it had continued disposition, the district court sentenced him to an above-Guidelines revocation sentence of 36 months' imprisonment.

After Coston's sentencing, the Supreme Court held that a different mandatory revocation provision, 18 U.S.C. § 3583(k), was unconstitutional in an as-applied challenge. *See United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019) (Breyer, J., concurring in the judgment). Relying on *Haymond*, Coston appeals the revocation of his supervised release, arguing that 18 U.S.C. § 3583(g) similarly violates his Fifth and Sixth Amendment rights. Coston also asserts that his prison sentence is plainly unreasonable. For the following reasons, we hold that any constitutional error is not plain at the time of this appeal and affirm Coston's sentence.

I.

In 2006, Coston pleaded guilty to one count of possession of cocaine base with intent to distribute and one count of firearm possession in furtherance of a drug trafficking offense. He was sentenced to 235 months' aggregate imprisonment, but successfully moved to reduce his sentence on the drug charge, shaving 55 months off his sentence. Coston was also sentenced to two 5-year terms of supervised release, to be served

concurrently.

Coston began supervised release in November 2014. Although Coston was admitted to community college, he asserts that he had transportation difficulties impacting both his education and employment. Suffering from a drug addiction, Coston missed urine screenings and tested positive for marijuana. In April 2015, he was pulled over by police, but he did not immediately stop his car. He states that he kept driving to find a better-lit location due to a recent police shooting. Once pulled over, the police found marijuana in the car. Coston was convicted for eluding police, driving on a suspended license and expired registration, and marijuana possession. He was sentenced to 6 months in jail. Financially strapped and unemployed, Coston also began buying items on Craigslist with counterfeit currency, which he asserts he received unwittingly. Coston was convicted for obtaining money by false pretenses and forging bank notes, and he was sentenced to 5 years' imprisonment, with 4 years and 6 months suspended, as well as supervised probation.

In 2016, Coston's federal probation officer petitioned to revoke his supervised release, alleging that he (1) committed a crime (referring to both recent state criminal cases); (2) failed to follow instructions, including by failing to appear for urine screenings; (3) failed to notify the probation officer of a change in residence; and (4) possessed marijuana. At his January 2017 revocation hearing, Coston admitted to each of these violations. The advisory Guidelines range was 18 to 24 months' imprisonment. After hearing Coston's mitigation, including both that he had not been eligible for the most in-depth drug treatment program in the Bureau of Prisons (BOP) because of his firearm

3

conviction and that he had not been able to enter any treatment programs while in state custody, the district court sentenced him at the low end, to 18 months in prison. The district court also recommended to the BOP that Coston learn a vocational skill, receive a medical evaluation, and participate in drug treatment. After imprisonment, he would go back on supervised release to serve the remainder of his original 5-year term: 42 months of supervised release.

That second 42-month term of supervised release began in March 2018. Again, Coston started off on the right foot, gaining employment with his new welding skills. However, by June 2018, probation alleged new violations: that Coston (1) failed to complete his drug treatment program; (2) failed to report for three drug tests; (3) failed to timely notify his probation officer of an arrest;[1] (4) twice failed to report to his reentry program; (5) possessed marijuana and cocaine, as determined by a positive drug test; and (6) failed to register with local police as a convicted felon. By the time of his hearing, Coston had registered with local police, which the district court "accept[ed]." J.A. 61. Coston admitted to each of the other violations, but not to possession of cocaine—only marijuana.

In mitigation, Coston testified as to various circumstances that had undermined his ability to comply with drug treatment and attend reentry meetings. He said that it had been a "wake-up call," J.A. 77, and asked for a second chance. The district court found that Coston violated his supervised release, but it did not revoke his supervision; instead, it

---

[1] Coston had been arrested for domestic assault and battery, which was *nolle prossed*.

continued disposition on these violations:

> What I would suggest we do is that these violations are of record, they are stipulated to, the Court has accepted them and found that he is in violation, but that we continue disposition on these violations pending any further violations and give Mr. Coston the chance to say what he means and mean what he says, and for him to know that with the Court, actions speak louder than words. He just under oath said that he was going to follow all the instructions and follow the supervised release . . . .
>
> If he truly wants an opportunity to avoid further incarceration and get his life back on track, now is his opportunity to do so.

J.A. 81–82.

During this third chance to successfully complete supervised release, Coston suffered serious traumatic events: his wife had a heart attack, requiring open-heart surgery, and his stepson was shot. As Coston explains it, he returned to marijuana to cope with these events. In October and November of 2018, his probation officer filed new addendums, alleging that Coston: (1) possessed marijuana, as determined by two positive drug tests, and as admitted; (2) missed two urine screens; and (3) missed two monthly reports.

In March 2019, the district court held a hearing regarding both these new violations and the prior violations for which disposition had been suspended. Coston stipulated to the three new violations, including the possession violation. Typically, a judge has broad discretion as to whether to terminate, continue, revoke, or otherwise modify supervised release. *See generally* 18 U.S.C. § 3583(e). However, Coston's stipulation to a third positive drug test in a one-year period triggered 18 U.S.C. § 3583(g), the "Mandatory Revocation for Possession of Controlled Substance or Firearm or for Refusal to Comply With Drug Testing" provision. Subsection 3583(g) provides that the court "*shall* revoke

5

the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3)," if the defendant:

> (1) possesses a controlled substance in violation of the condition set forth in subsection (d);
>
> (2) possesses a firearm, as such term is defined in section 921 of this title, in violation of Federal law, or otherwise violates a condition of supervised release prohibiting the defendant from possessing a firearm;
>
> (3) refuses to comply with drug testing imposed as a condition of supervised release; or
>
> (4) as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year.

18 U.S.C. § 3583(g) (emphasis added). The district court correctly acknowledged at the outset of Coston's hearing that § 3583(g)(4) would apply based on his three failed drug tests.

Importantly, there is one statutory exception to mandatory revocation when a defendant has failed drug tests. As argued by Coston at the hearing, the court could have ordered inpatient drug treatment rather than revoke Coston's supervised release. *See* 18 U.S.C. § 3583(d) ("The court shall consider whether the availability of appropriate substance abuse treatment programs . . . warrants an exception in accordance with [U.S.S.G.] guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test."); *see also* U.S.S.G. § 7B1.4 cmt. application n.6. Coston explained through counsel that he had been using drugs since he was eleven years old, had never received inpatient treatment, and really wanted the help. But the court rejected inpatient treatment as a possibility, explaining that Coston had "squandered his

6

opportunities," and that he was not "entitled to go to the [chosen] inpatient program when the system has programs just as good or better." J.A. 107.

The government asked for a Guidelines range sentence of 18 to 24 months' imprisonment; defense counsel requested at least a downward variance, arguing that these newest violations were much less serious than his prior violations. Defense counsel also explained the mitigating circumstances of Coston's familial traumas. Expressing that "[t]here are always going to be human problems," the court "assume[d] all of it is true, to short-circuit some of this." J.A. 106–07.

In a lengthy colloquy, the district court explained why Coston's criminal history, the need for deterrence, and public safety all weighed in favor of this sentence. The district court noted in part Coston's "long history with [the] Court dating back some almost 15 years," and that it had "been nothing but continuous violations since [Coston] ha[d] been on supervised release." J.A. 111–12. It considered deterrence to be "one of the most important factors" in Coston's case, because he "ha[dn't] been deterred yet"—even by his prior 18-month revocation sentence. J.A. 115. It also found that if Coston could not fix his drug problem, he would be a "danger to the public." J.A. 115. It ordered further drug treatment, while also averring that it would "look at the need to avoid unwarranted sentencing disparity and all the guideline statements." J.A. 116. Additionally, the district court noted that "it is rare that somebody comes before the Court three times on supervised release. It is not a normal happening." J.A. 116. In all, the district court was "not convinced that the advisory guidelines are sufficient, but not greater than necessary to put [Coston] back, hopefully, on some kind of straight and narrow path . . . ." J.A. 116–17.

7

Ultimately, the district court revoked Coston's supervised release and sentenced him to an above-guidelines range sentence of 36 months' imprisonment, which was still within his original authorized sentence. Finding that Coston had "not shown that he is a good candidate for supervised release," J.A. 117, the district court did not impose an additional term of supervised release.

Coston timely appealed, arguing for the first time and based on an intervening Supreme Court case that the revocation provision applicable in his case, § 3583(g), is unconstitutional under the Fifth and Sixth Amendments. Coston additionally asserts that his sentence is plainly unreasonable because the district court over-emphasized deterrence, failed to adequately consider mitigation, and failed to consider resulting sentencing disparities for marijuana offenses.

II.

We first consider Coston's argument that § 3583(g) facially violates the Due Process Clause of the Fifth Amendment and the right to a jury under the Sixth Amendment, because it mandates revocation based on a finding of fact made by a judge, which necessarily results in a carceral sentence of at least one day in prison. We review the constitutionality of a statute de novo. *See United States v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010). Because Coston did not preserve a constitutional challenge to § 3583(g), however, we review his claim for plain error. *See United States v. Webb*, 738 F.3d 638, 640–41 (4th Cir. 2013); *see also United States v. Badgett*, 957 F.3d 536, 539 (5th Cir. 2020) (reviewing a post-*Haymond*, unpreserved constitutional challenge to § 3583(g) for plain error).

8

Within plain error review, Coston must establish (1) an error, (2) that was plain, and (3) that affected his substantial rights. *See United States v. Olano*, 507 U.S. 725, 732 (1993). If he satisfies those factors, we may exercise our discretion to correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id*. (alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). For the reasons that follow, we need not reach whether § 3583(g) is unconstitutional, and its application therefore erroneous, because any error is not plain.

An error is plain if it is "clear" or "obvious" by the time of appeal, either because of "settled law of the Supreme Court or this circuit" or, "[i]n the absence of such authority, decisions by other circuit courts of appeals." *See United States v. Promise*, 255 F.3d 150, 160 (4th Cir. 2001) (quoting *United States v. Neal*, 101 F.3d 993, 998 (4th Cir. 1996)). Coston contends that the recent Supreme Court decision *Haymond* makes plain the unconstitutionality of § 3583(g). We disagree. While the plurality may have reached a result perhaps more favorable to Coston, the Supreme Court's 4-1-4 split leaves us with a controlling factor-based test that does not clearly capture § 3583(g).

In *Haymond*, five Supreme Court Justices held that a different mandatory revocation provision, § 3583(k), violates the Fifth and Sixth Amendments. *See* 139 S. Ct. at 2373 (plurality opinion); *id*. at 2386 (Breyer, J., concurring in the judgment). Under § 3583(k),

> if a judge finds by a preponderance of the evidence that a defendant on supervised release committed one of several enumerated offenses, including the possession of child pornography, the judge *must* impose an additional prison term of at least five years and up to life without regard to the length of the prison term authorized for the defendant's initial crime of conviction.

9

*See id*. at 2374 (plurality opinion).  Notably, although § 3583(k) allows for a revocation sentence to exceed a defendant's sentence in the underlying criminal conviction, that was not the case for Haymond.  Still, Haymond "faced a minimum of five years in prison instead of as little as none."  *Id*. at 2378 (plurality opinion).

On appeal, Coston leans heavily on the logic from Justice Gorsuch's plurality opinion to demonstrate § 3583(g)'s unconstitutionality.  The *Haymond* plurality emphasized the "structural difference" between traditional parole, which operated as a form of conditional liberty, and supervised release, which was introduced "only to encourage rehabilitation *after* the completion of [a defendant's] prison term."  *Id*. at 2382.  According to the plurality, that difference "bears constitutional consequences"—namely, the inability to circumvent the historically significant jury right.  *See id*.  To the plurality, this is also an obvious outgrowth of the *Apprendi* line of cases, which has held that any element that necessarily increases the minimum or maximum prison sentence must be proven to a jury beyond a reasonable doubt.  *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *see also Alleyne v. United States*, 570 U.S. 99 (2013).  Although the plurality expressly did not reach § 3583(g), *see Haymond*, 139 S. Ct. at 2382 n.7, Coston argues that § 3583(g) similarly unconstitutionally avoids a jury for a finding that necessarily results in at least one day in prison.

However, Justice Breyer's concurrence presented the narrowest grounds for the Court's holding and therefore controls.  *See Marks v. United States*, 430 U.S. 188, 193 (1977); *A.T. Massey Coal Co. v. Massanari*, 305 F.3d 226, 236 (4th Cir. 2002); *see also Badgett*, 957 F.3d at 540 (applying the *Marks* rule to *Haymond* and holding that Justice

10

Breyer's concurrence controls). And that concurrence departed from the plurality in two key ways: it found that supervised release is not so different from traditional parole, and that *Apprendi* and *Alleyne* do not apply in the supervised release context. *See Haymond*, 139 S. Ct. at 2385 (Breyer, J., concurring in the judgment).

Rather, Justice Breyer held that § 3583(k) is unconstitutional because the five-year mandatory minimum for enumerated violations resembles criminal punishment for a new offense without any trial rights, rather than a sanction for breach of the court's trust. *See Haymond*, 139 S. Ct. at 2386 (Breyer, J., concurring in the judgment) (noting that § 3583(k) is "difficult to reconcile" with the principle that revocation sentences are "first and foremost considered sanctions for the defendant's 'breach of trust'—his 'failure to follow the court-imposed conditions' that followed his initial conviction—not 'for the particular conduct triggering the revocation as if that conduct were being sentenced as new federal criminal conduct'" (quoting U.S.S.G. ch. 7, pt. A, intro. cmt. 3(b) (Nov. 2018))). In so holding, Justice Breyer identified three aspects of § 3583(k) that appear to punish a crime rather than sanction breach of trust:

> *First*, § 3583(k) applies only when a defendant commits a discrete set of federal criminal offenses specified in the statute. *Second*, § 3583(k) takes away the judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long. *Third*, § 3583(k) limits the judge's discretion in a particular manner: by imposing a mandatory minimum term of imprisonment of "not less than 5 years" upon a judge's finding that a defendant has "commit[ted] any" listed "criminal offense."

*Id*. (alteration in original). These three factors control our analysis of § 3583(g).

Under these factors, § 3583(g) is an imperfect fit. Take the first factor, that it applies

11

to "a discrete set of federal criminal offenses." *Id.* On the one hand, § 3583(g) applies when a defendant commits certain federal offenses, like possession of a controlled substance, or of a "firearm . . . in violation of Federal law." *See* 18 U.S.C. § 3583(g)(1)–(2). But refusing to comply with urine samples, one of the § 3583(g) triggers, is not a federal crime. And, unlike § 3583(k), § 3583(g) does not cross-reference federal criminal statutes. To be sure, applying the second factor, in some cases § 3583(g), like § 3583(k), "takes away the judge's discretion to decide whether a violation . . . should result in imprisonment." *See Haymond*, 139 S. Ct. at 2386 (Breyer, J., concurring in the judgment). It mandates imprisonment of at least one day in cases where the exception to mandatory imprisonment in § 3583(d) does not apply. But, unlike § 3583(k), it does not strip the court of its discretion to decide "for how long" the defendant should be imprisoned. *See id*. Moreover, as to the third factor, it does not "limit the judge's discretion in a particular manner" that results in the imposition of a "mandatory minimum term of imprisonment of 'not less than 5 years.'" *Id.* The only particular manner by which § 3583(g) limits the judge's discretion is by mandating revocation in a subset of cases, and the judge retains broad discretion to craft a sentence of one day or more. Further, unlike § 3583(k), any sentence imposed under § 3583(g) is "limited by the severity of the original crime of conviction, not the conduct that results in revocation." *Haymond*, 139 S. Ct. at 2386 (Breyer, J., concurring in the judgment).

Overall, § 3583(g) likely does not meet Justice Breyer's controlling test. And given that no majority of the Supreme Court endorsed the application of *Alleyne* in the supervised release context, we remain bound by this Court's prior decision that it does not. *See United*

*States v. Ward*, 770 F.3d 1090, 1099 (4th Cir. 2014) (holding that *Alleyne* does not apply to supervised release revocation proceedings); *see also United States v. Mooney*, 776 F. App'x 171, 171 (4th Cir. 2019) (holding post-*Haymond* that "*Ward* remains good law"). For these reasons, we hold that any error is not plain, and affirm the revocation of Coston's supervised release under § 3583(g).

III.

Having affirmed the revocation of Coston's supervised release, we turn now to his sentence. A sentencing court has "broad discretion" to impose a revocation sentence "up to the statutory maximum.'" *United States v. Crudup*, 461 F.3d 433, 439 (4th Cir. 2006) (quoting *United States v. Lewis*, 424 F.3d 239, 244 (2d Cir. 2005)). We affirm a revocation sentence so long as it is "within the prescribed statutory range and is not plainly unreasonable." *Id.* at 437–40. First, we determine whether the sentence is "unreasonable at all," procedurally or substantively. *United States v. Thompson*, 595 F.3d 544, 546 (4th Cir. 2010). If it is not, we affirm; if it is unreasonable, we determine whether it is plainly so. *See United States v. Slappy*, 872 F.3d 202, 206–07 (4th Cir. 2017).

Coston's sentence was not plainly unreasonable because it reflected his repeated violations of supervised release. Although above the Guidelines range, Coston's sentence was within the statutory term. Moreover, it was not procedurally or substantively unreasonable. "A revocation sentence is procedurally reasonable if the district court adequately explains the chosen sentence after considering the Sentencing Guidelines' nonbinding Chapter Seven policy statements and the applicable 18 U.S.C. § 3553(a)

13

factors." *Slappy*, 872 F.3d at 207 (4th Cir. 2017) (footnote omitted). "A revocation sentence is substantively reasonable if, in light of the totality of the circumstances, the court states an appropriate basis for concluding 'that the defendant should receive the sentence imposed.'" *United States v. Moore*, 775 F. App'x 94, 95 (4th Cir. 2019) (quoting *United States v. Gibbs*, 897 F.3d 199, 204 (4th Cir. 2018)).

Here, the district court explained in its colloquy why relevant § 3553(a) sentencing factors, including deterrence, public safety, and criminal history, all weighed in favor of its revocation sentence. Based on its fifteen years' experience with Coston, the district court deemed him not to be a "good candidate" for supervised release and sentenced him to a longer imprisonment term of 36-months' imprisonment, with no additional supervised release term.

In doing so, the district court did not, as Coston asserts, unreasonably over-emphasize deterrence. In part, Coston argues that his newest violations were less serious than his prior violations, and that consideration of the same sentencing factors therefore should have resulted in a lighter sentence. Coston has overlooked the fact that the court was facing not just Coston's new violations (possession of marijuana, missed urine screens, and missed monthly reports), but also his prior violations, including another marijuana possession violation and his failure to attend reentry programming. Overall, as the district court viewed it, 18 months' imprisonment for Coston's first round of supervised release violations had not been enough to deter him, and he had been unable to keep his promise to the court after his second round of violations.

14

Coston also believes that the district court failed to adequately consider his mitigating circumstances, deciding instead to "short-circuit" those arguments. After hearing about Coston's recent familial traumas, the district court explained why those arguments had, after repeated violations, begun to fall flat. Reading the record as a whole, we understand the district court to mean that it was willing to accept everything Coston was saying as true, and yet was more concerned with its prior inability to deter Coston from future violations.

Finally, Coston asserts that the court unreasonably failed to consider resulting sentencing disparities for marijuana offenses. As he points out, some of our district courts have noted disparities in both prosecution and sentencing for marijuana offenses, arising in part from a patchwork of state laws and an overlay of federal criminalization. *See United States v. Guess*, 216 F. Supp. 3d 689, 695–97 (E.D. Va. 2016); *see also United States v. Dayi*, 980 F. Supp. 2d 682, 685–87 (D. Md. 2013). Although a three-year prison term may well be out of step with what sentencing courts are doing in marijuana possession cases, the problem for Coston is that his prison term was not for marijuana possession—it was for *violating supervised release* by possessing marijuana, in addition to other violations. *See Guess*, 216 F. Supp. 3d at 697–99 (having summarized marijuana sentencing disparities, explaining that it was sentencing defendant for violations of supervised release conditions, which may include "conditions that do not apply to the general population"). As discussed above in Part II, if Coston's sentence under the supervised release scheme was constitutional, it was only so because he was being punished for breaching the court's trust, and not for a crime. Therefore, the district court did not act unreasonably by failing

15

to factor sentencing disparities with marijuana possession cases into Coston's revocation sentence.

Given the district court's care in explaining Coston's sentence, and especially considering that court's historic inability to prevent Coston from repeatedly violating supervised release conditions, we hold that his sentence is not unreasonable. The district court's judgment is

*AFFIRMED*.